William Litvak (CA State Bar No. 90533)
**DAPEER ROSENBLIT LITVAK, LLP**
11500 W. Olympic Blvd. Suite 550
Los Angeles, California 90064
Telephone: (310) 477.5575
Email: wlitvak@drllaw.com

Scott Edelsberg (FL State Bar No. 100537)*
**EDELSBERG LAW, PA**
20900 NE 30th Ave., #417
Aventura, FL 33180
Telephone: (305) 975-3320
Email: scott@edelsberglaw.com

Andrew Shamis (FL State Bar No.101754) *
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: (305) 479-2299
Email: ashamis@shamisgentile.com

Rachel Dapeer, Esq. (FL State Bar No. 108039)*
**DAPEER LAW, P.A.**
300 S Biscayne Blvd, #2704
Miami, FL 33131
Telephone: (305) 610-5223
Email: rachel@dapeer.com

Edmond A. Normand (FL State Bar No. 865590) *
Jacob L. Phillips (FL State Bar No. 120130)*
**NORMAND PLLC**
3165 McCrory Place, Suite. 175
Orlando, FL 32803
Telephone: (407) 603-6031
Email: service@normandpllc.com
Email: ed@normandpllc.com
Email: jacob@normandpllc.com
* *Pro Hac Vice to follow*

1

CLASS ACTION

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY ANN SPERLING, individually, and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation,<br><br>       Defendant. | Case No.: '20CV1014 LAB LL<br><br>**CLASS ACTION COMPLAINT**<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Wendy Ann Sperling ("Ms. Sperling" or "Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against State Farm Mutual Automobile Insurance Company ("State Farm"), and in support thereof state the following:

## INTRODUCTION

1.  This is a class action lawsuit brought by Plaintiff, an insured under a State Farm automobile policy issued for private passenger auto physical damage including comprehensive and collision coverage (the "Policy"). Defendant's Policy promises payment of "Actual Cash Value" ("ACV") in the event of a total loss of an insured vehicle. Pursuant to the terms of the Policy, ACV includes, *inter alia*, State sales tax and State-mandated regulatory fees. However, in violation of its Policy, State Farm refuses to pay mandatory regulatory fees (or, in

cases, underpays mandatory regulatory fees) when it purports to pay ACV to insureds who have suffered a total loss of their insured vehicle.

2.      Defendant State Farm is one of the largest passenger auto insurance carriers operating in the State of California. One of the coverages State Farm sells to consumers is comprehensive and collision coverage. State Farm systematically and uniformly underpaid Plaintiff and thousands of other putative Class Members amounts owed its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

3.      Pursuant to its standard Policy form language, State Farm is obligated to pay the full title, registration and regulatory fees imposed by the State of California on the purchase and registration of automobiles in the state ("ACV regulatory fees"). Nevertheless, State Farm, in violation of its contract, pays none or only a portion of such fees to all insureds, thus breaching its contract with every insured who suffered a total-loss to their insured vehicle.

4.      This lawsuit is brought by Plaintiff individually and on behalf of all other similarly situated insureds who have suffered damages due to State Farm's practice of refusing to pay full ACV regulatory fees to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

5.      The failure to pay ACV regulatory fees on first-party total losses owed to State Farm insureds pursuant to State Farm's uniform policy language constitutes a breach of the policy.

**THE PARTIES**

6.      Plaintiff, Wendy Ann Sperling, is domiciled and resides in San Diego County, California, and is a citizen of the State of California.

7.      At all times material hereto, State Farm is and was a foreign

corporation domiciled in the State of Illinois, incorporated in Illinois, with its principal place of business in Illinois, and authorized to transact insurance in the State of California.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

9. Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## AMOUNT IN CONTROVERSY

10. Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is among the largest motor vehicle insurers in the State of California and writes hundreds of millions of dollars of physical damage coverage premiums, the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members.

//

//

4

CLASS ACTION

corporation domiciled in the State of Illinois, incorporated in Illinois, with its principal place of business in Illinois, and authorized to transact insurance in the State of California.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

9. Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## AMOUNT IN CONTROVERSY

10. Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is among the largest motor vehicle insurers in the State of California and writes hundreds of millions of dollars of physical damage coverage premiums, the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members.

//

//

4

CLASS ACTION

# FACTUAL ALLEGATIONS

### A.     The State Farm Policy

11.     Defendant State Farm's policy language as to comprehensive and collision coverage for ACV of total loss vehicles is standardized and is present in State Farm auto policies issued by Defendant in California. Indeed, Plaintiff and all putative Class members were insured under a standard, form policy that includes identical material language. The Policy under which Plaintiff was insured, which is materially identical to the Policy under which all putative Class members were insured, is affixed hereto as "**Exhibit A**".

12.     In the part of the Policy, entitled "PHYSICAL DAMAGE COVERAGES" State Farm states that it will pay for "*loss*" of a "*covered vehicle*." Policy at 19 of 34 (emphasis in original)

13.     "Loss" is defined as "direct, sudden, and accidental damage to a *covered vehicle*." *Id.* at 18 or 34 (emphasis in original).

14.     "Covered Vehicle" includes "*your car*." *Id.* (emphasis in original).

15.     "Your Car" is defined as "the vehicle shown under 'YOUR CAR' on the Declarations Page." *Id.* at 5 of 34 (emphasis in original).

16.     The limit of liability is established as, *inter alia*, "the actual cash value of the *covered vehicle* minus any applicable deductible." *Id.* at 21 of 34 (emphasis in original).

17.     Actual Cash Value is not specifically defined in the policy.

18.     There is no difference, for purposes of Defendant's duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim. *See generally Id.*

19.     Clearly, then, the policy language does not further define ACV as including, for example: (1) any provision excluding mandatory regulatory fees

from ACV; (2) any provision deferring payment of the ACV regulatory fees for any purpose whatsoever; or (3) any provision requiring an insured to obtain a replacement vehicle at all. Instead, the Policy establishes ACV as a *predictable amount* upon which both State Farm and the insured can rely.

20. The ACV of the insured vehicle is an independent amount. The ACV is the same whether the insured paid nothing for the total loss vehicle, paid less than what the vehicle was worth, or paid more than what the vehicle was worth. The ACV is the same whether the insured replaces the vehicle with a more expensive vehicle, a less expensive vehicle, or chooses not to replace the vehicle at all.

21. The policy language applies to all covered autos irrespective of ownership interests—whether owned, financed or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the policy.

**B.     Regulatory Fees Are Replacement Costs**

22. The State of California imposes mandatory one-time and annual regulatory fees on the purchase and registration of all vehicles. Vehicles are required to be legally titled and registered in order to be used and operated in the State of California. California imposes fees on such transactions, including, but not limited to, a title transfer fee of $15.00, a registration fee of $60.00, county fees of up to $19.00, a California Highway Patrol ("CHP") fee of $26.00, a Transportation Improvement Fee ("TIF") of $25.00-$175.00, and a Vehicle License Fee ("VLF") of 0.65% of the adjusted vehicle value. These fee amounts and categories – title transfer fee, registration fee, county fee, CHP fee, TIF, and VLF – are "ACV regulatory fees."  As mandatory, unavoidable fees, such fees are incontrovertibly part of the costs to replace a total-loss vehicle.

23. As set forth above, State Farm promises to pay the ACV of an insured vehicle in the event of, *inter alia*, a total loss. Fees are an element of the replacement cost of the vehicle, and therefore incontrovertibly an element of ACV of the insured vehicle. *Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, at *8 (N.D. Cal. May 22, 2017) (citing *Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp. 2d 825, 831-32 (N.D. Tex. 2011) (explaining that the "ordinary meaning of replacement costs" in the context of ACV is "a composite of all reasonably foreseeable repair or replacement costs).

24. Whether the ACV of a total-loss vehicle includes mandatory Transfer Fees is a question of law and is therefore excluded from the scope of the appraisal clause, which expressly states appraisers cannot determine questions of law.

**C.** **State Farm Systematically Fails to Pay All Regulatory Fees for Total-Loss Vehicles**

25. State Farm's uniform procedure is to use a third-party vendor, AudaExplore, to determine the "base" and "adjusted" value of total loss vehicles by using the price to purchase comparable vehicles at the time of the loss. The base value takes into account depreciation (age, mileage, etc.), while the adjusted value takes into account the actual condition of the total loss vehicle relative to comparable vehicles.

26. The adjusted vehicle value is otherwise known as the "appraised" value of the vehicle, and it is the amount on which the sales tax owed is based – otherwise, it is irrelevant to this lawsuit and Plaintiff does not challenge the determination of the adjusted vehicle value.

27. In addition to the appraised value (which takes into account depreciation and condition), other mandatory replacement costs—title fees, registration fees, and sales tax—are a component of the ACV, and, therefore, should be included in Defendant's calculation of the ACV. *See Johnson*, 2017 WL

2224828, at *8.

28. Under the terms of the Policy, therefore, the ACV of a vehicle is the adjusted vehicle value, *plus mandatory regulatory* fees (title and registration fees) and sales tax. Thus, the amount owed insureds who suffer a total loss is the adjusted vehicle value, plus mandatory regulatory fees (title and registration fees) and sales tax, less any applicable deductible and salvage retention value.

29. Nevertheless, in California, State Farm does *not uniformly* pay the full regulatory fees owed as a part of the ACV replacement costs for the total loss vehicle.

30. State Farm's Policy does not contain any provision or clause stating State Farm will pay only a prorated or partial amount of the costs to replace the insured vehicle. Instead, State Farm simply promises to pay the costs to replace the vehicle.

31. State Farm's Policy does not distinguish between owned, financed, and leased vehicles; instead, it explicitly treats them the same for purposes of ACV payments. It promises to pay precisely the same amount—ACV—to every policyholder.

32. State Farm Policy promises payment of full regulatory fees as part of the cost to replace the vehicle, without taking into account, for example, what amount, if any, was previously paid for the vehicle, nor what amount, if any, is actually incurred in replacing the vehicle. In fact, if the insured received the vehicle as a gift and, therefore, paid no regulatory fees at all, the ACV of the insured vehicle, according to the terms of the Policy, is nevertheless unaffected. If the insured *does not replace the total loss vehicle at all*, the ACV of the vehicle is unaffected. State Farm's Policy does not condition payment of ACV on actual replacement. *See generally* **Ex. A**.

### D. Plaintiff's Total Loss Claim

33. At all times material hereto, Plaintiff Sperling owned and insured a 2014 Toyota Prius, VIN # JTDKDTB3XE1076137.

34. Plaintiff insured the 2014 Toyota Prius (the "insured vehicle") under an insurance policy issued by Defendant. **Ex. A** (Policy); **Exhibit B** (Sperling Decl. Sheet). Defendant insured Plaintiff's vehicle according to this Policy at all times material hereto.

35. On or about April 18, 2017, Plaintiff was involved in an accident while operating the insured vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 75-0054-P71.

36. Following the filing of said claim, State Farm, through its third-party vendor, AudaExplore, determined that the vehicle was a total loss with an adjusted market value of $12,126.00, and then added $939.77 for sales tax and subtracted the $500.00 deductible to arrive at a net adjusted value of $12,565.77.

37. The adjusted market value and net adjusted value are calculated by AudaExplore based on the "sticker price" of comparable vehicles listed for sale in the local market.

38. Next, State Farm followed the same formula for a total payment of $12,565.77. However, State Farm made no payment for state and regulatory fees owed under the Policy.

39. State Farm's underpayment of the ACV regulatory fees certainly constituted a breach of contract.

40. Plaintiff Sperling paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently— State Farm acknowledged that Plaintiff satisfied all conditions precedent required under the Policy.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23, more specifically defined as follows, and hereinafter referred to as the "Class":

> All individuals insured under a California policy issued by State Farm Mutual Automobile Insurance Company with the same operative policy language covering an owned or financed vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and where the total loss payment included a prorated amount (or no amount) for state and local regulatory fees imposed by the State of California ("ACV regulatory fees") within four years prior to the date on which this lawsuit was filed through the date of any certification order.

42. Certification of the above class is supported by the following considerations:

   a. The relatively small amount of damages that members of the class has suffered on an individual basis would not justify the prosecution of separate lawsuits;
   b. Counsel in this class action are not aware of any previously filed litigation against State Farm in which any of the members of the class is a party and which any question of law or fact in the subject action can be adjudicated; and
   c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

43. Although the precise number of members of the Class is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff understands Defendant to be one of the largest motor vehicle insurers in the State of California—one that writes hundreds of millions of dollars of physical damage coverage premiums. Thus, the class of persons affected by Defendant's unlawful practice alleged herein consists of thousands of individuals, or the class of persons effected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a systematic and uniform practice, employed by Defendant in violation of standardized and uniform insurance policy language, which results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the Class members.

44. The precise number of members of the Class can only be determined through discovery. However, upon information and belief, including investigation by her attorneys and public information concerning the statistical likelihood of total losses per premiums written, Plaintiff believes the Class is comprised of approximately 100,000 members. Numerosity under Rule 23(a)(1) is established.

45. Rule 23(a)(2)'s commonality requirement is also satisfied. The central issues in this litigation turn on the interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendant and all members of the Class, including Plaintiff, are bound by materially identical policy terms.

46. As to the Class, common questions include (but are not limited to): (1) whether Defendant's Policy promised to pay insureds regulatory fees upon the total loss of an insured vehicle; (2) whether Defendant is permitted to underpay regulatory fees.

//

47. Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiff and members of the Class were injured by Defendant's uniform misconduct. Further, Plaintiff and Class members' legal claims arise from the same core practices: namely, the failure to pay the full ACV of insured vehicles on first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the members of the Class. Plaintiff suffered the same harm as all other members of the Class: the coverage for regulatory fees that Defendant underpaid its insureds. Plaintiff is not subject to any unique defenses nor does Plaintiff bring any unique claims.

48. The relevant Policy provisions for each Class member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class member is the same.

49. Rule 23(b)(3)'s predominance requirement is satisfied. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class members.

50. As to the Class, the critical common question—does Defendant's promise to pay the ACV of the total loss vehicle obligate it to include ACV regulatory fees—is identical for every member of the Class.

51. Further, the measure of damages, if any, is the same for every member of the Class, and any variances in the prorated amount paid in ACV regulatory fees, the application of which is a purely ministerial function. Otherwise, there are no individualized questions of fact or law.

52. Further, Rule 23(b)(3)'s superiority requirement is met here: class treatment is superior to any other alternative method of adjudication because the damages suffered by individual members of the Class is relatively small, their interests in maintaining separate actions is questionable and the expense and

burden of individual litigation makes it impracticable for Class members to seek individual redress for the wrongs done to them. Even if some members of the Class could afford individual litigation, the court system could not. Thousands of individual cases asserting precisely the same claim that Plaintiff asserts here would be uneconomical and would strain (indeed, likely overwhelm) judicial resources.

53. As to the Class, class treatment is superior because every claim will be substantially determined by answering the single question of whether Defendant's Policy obligates payment of ACV Regulatory Fees. It is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. No difficulty would be encountered in the management of this case that would preclude its maintenance as a class action. To the contrary, several other similar total loss class actions against other insurers were successfully treated as class actions.

54. Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff possess no conflict with members of the Class. Plaintiff's claim does not conflict with that of any member of the Class, and Plaintiff has no financial or any other interest conflicting with those of the Class. Plaintiff fully intends to vigorously protect the interests of Class members in prosecuting these claims.

55. Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Moreover, Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include ACV Regulatory Fees after total losses.

# FIRST CLAIM FOR RELIEF
BREACH OF CONTRACT

56. Plaintiff Sperling incorporates by reference paragraphs 1-54 as though fully set forth herein.

57. Plaintiff was a party to an insurance contract with Defendant as described herein. All Class members were parties to insurance contracts with Defendant containing materially identical terms.

58. The interpretation of Plaintiff's and all Class members' Policies is governed by California law.

59. Plaintiff and all Class members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

60. Defendant, by paying the total loss claim, determined that Plaintiff and each Class member complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policies for the insured to be paid on his or her total loss.

61. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and members were owed the ACV of the vehicle, which, per the terms of the Policies, includes ACV Regulatory Fees in the amounts set by California law.

62. Defendant refused or otherwise failed to pay ACV Regulatory Fees as part of its purported ACV payment to Plaintiff and every Class member, following Defendant's determination that a vehicle was a total loss.

63. Defendant's failure to provide payment for the ACV regulatory fees constitutes a material breach of contract with Plaintiff and every Class member.

64. As a result of said breaches, Plaintiff and the Class members are entitled, under Defendant's insurance Policies, to sums representing the benefits

owed for ACV regulatory fees, as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sperling individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks and prays for relief and judgment as follows:

    a.    For an Order certifying this action as a Class Action on behalf of the Class described above;

    b.    For an award of compensatory damages for Plaintiff and members of the Class in amounts owed under the Policy;

    c.    For all other damages according to proof;

    d.    For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

    e.    For pre- and post- judgment interests on any amounts awarded; and

    f.    For other and further forms of relief as this Court deems just and proper.

//

//

//

//

//

//

//

//

//

**JURY DEMAND**

Plaintiff demand a trial by jury on all issues so triable.

Dated: June 2, 2020            By:     s/ William Litvak
**DAPEER ROSENBLIT LITVAK, LLP**
William Litvak (State Bar No. 90533)
wlitvak@drllaw.com
11500 W. Olympic Blvd. Suite 550
Los Angeles, California 90064
Telephone: (310) 477-5575

Scott Edelsberg*
**EDELSBERG LAW, PA**
20900 NE 30th Ave., #417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com

Andrew Shamis*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com

Rachel Dapeer, Esq.*
**DAPEER LAW, P.A.**
300 S Biscayne Blvd, #2704
Miami, FL 33131
Telephone: (305) 610-5223
rachel@dapeer.com

Edmond A. Normand*
Jacob L. Phillips*
**NORMAND PLLC**
3165 McCrory Place, Suite. 175
Orlando, FL 32803
Telephone: (407) 603-6031
service@normandpllc.com
ed@normandpllc.com
jacob@normandpllc.com

*Pro Hac Vice to follow*

*Attorneys for Plaintiff and the Proposed Class*

16
CLASS ACTION